IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

VAN LE,

                              Petitioner,                              **4:26CV3041**

            v.

WARDEN, McCook ICE Detention Center;                              **MEMORANDUM**
and UNITED STATES OF AMERICA,                              **AND ORDER**

                              Respondents.

This matter is before the Court on Petitioner Van Le's ("Le") Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241 (Filing No. 1). For the reasons stated below, his petition is denied.

## I.   BACKGROUND

Le entered the United States in 1979 as a refugee from Vietnam. He later adjusted his status to lawful permanent resident on June 4, 1986 (Filing No. 6). That status was short lived. On January 14, 1991, he pleaded guilty and was convicted of two robberies in the 292nd District Court of Dallas County, Texas. The immigration judge's ("IJ") removal order (Filing No. 6-3) described a home invasion in which Le tied up two victims to rob them while his accomplice shot one of the victims. Under the Immigration and Nationality Act ("INA"), the offenses to which Le pleaded guilty are "aggravated felonies," subjecting him to mandatory removal from this country. *See* 8 U.S.C. §§ 1101(a)(43)(G), 1227(a)(2)(A)(iii).

While Le was serving two concurrent five-year sentences for those robberies, immigration officials initiated removal proceedings against him. The IJ found Le had "failed to show much in the way of rehabilitation," and ordered him removed to Vietnam on November 16, 1995, under INA section 241(a)(2)(A)(ii), 8 U.S.C. § 1227(a)(2)(A)(ii). *See id.* ("Any alien who at any time after admission is convicted of two or more crimes

involving moral turpitude, not arising out of a single scheme of criminal misconduct, regardless of whether confined therefor and regardless of whether the convictions were in a single trial, is deportable.").

But due to challenges repatriating Le at that time, he was placed on supervised release.  Then in November 2020, Vietnam executed a Memorandum of Understanding (or "MOU") with the United States, agreeing to accept its citizens who entered the United States before July 12, 1995, and were later ordered removed (Filing No. 15-1).[1]  And on October 1, 2025, Immigration and Customs Enforcement ("ICE") revoked Le's supervised release and detained him to execute his removal to Vietnam.

His "Notice of Revocation of Release" (the "notice") (Filing No. 6-7) explains changed circumstances in his case have led to a "significant likelihood of [his] removal in the reasonably foreseeable future."  *See* 8 C.F.R. § 241.13(i)(2) (explaining that ICE[2] "may revoke an alien's [supervised release] and return the alien to custody if, on account of changed circumstances, [ICE] determines that there is a significant likelihood that the alien may be removed in the reasonably foreseeable future").  The notice further states Le would receive an informal interview during which he could respond to the reasons for the revocation.  *See* 8 C.F.R. § 241.13(i)(3) (requiring ICE to provide an interview).

Le then filed a *pro se* petition for a writ of habeas corpus under 28 U.S.C. § 2241 on February 11, 2026, challenging his detention.  He states he is physically detained at the "McCook ICE Detention Center" in McCook, Nebraska, and names the warden of that facility as the respondent.  Invoking the Due Process Clause of the Fifth Amendment to the

---

[1]Individuals who arrived on or after June 12, 1995, are covered by another agreement.

[2]Most of the relevant regulations refer to "the Service"—the former Immigration and Nationalization Service which has been abolished.  *See* 6 U.S.C. § 291.  "The Service" now refers to "U.S. Citizenship and Immigration Services, U.S. Customs and Border Protection, and/or U.S. Immigration and Customs Enforcement, as appropriate in the context in which the term appears."  8 C.F.R. § 1.2.

United States Constitution, he asserts his detention is unlawful because he has been detained for a prolonged period of time without a bond hearing and his detention has become "effectively indefinite." He seeks either a bond hearing or his immediate release under conditions of supervision.

On February 12, 2026, the Court added the United States Attorney for the District of Nebraska to the docket as "counsel for the Respondents" and ordered her to respond (Filing No. 3). The government responded (Filing No. 4), clarifying that it could not represent the warden of the McCook Detention Facility, but to the extent that ICE is a respondent, it would respond. The Court then appointed counsel for Le and added the United States of America as a named respondent (Filing No. 8).

The government argues Le's removal is "significantly likely to occur within the reasonably foreseeable future" because Le's travel documents to Vietnam are pending. *See Zadvydas v. Davis*, 533 U.S. 678, 701 (2001). In support of this argument, it has presented the sworn declaration of a deportation officer familiar with Le's case (Filing No. 6) and a copy of Le's completed "Self-Declaration Form" used to request Le's travel documents from Vietnam (Filing No. 6-10). The deportation officer reports ICE reviewed the self-declaration form and sent it to the "Vietnam Attache" for processing on November 24, 2025.

In reply (Filing No. 13), Le—now represented by counsel—contends his continued detention is unlawful because "he has been detained beyond the *presumptively* valid 180-day detention period." *See id.*; 8 U.S.C. § 1231(a)(1)(B). In his view, his removal is not reasonably foreseeable and the revocation of his supervised release violates federal regulations. *See* 8 C.F.R. § 241.4.

## II.   DISCUSSION

### A.   Habeas Corpus

Absent suspension, "the writ of habeas corpus remains available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const. Art. I, § 9, cl. 2). Under § 2241, the writ is extended to persons "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). The Court's habeas jurisdiction includes challenges to immigration-related detention. *See Zadvydas*, 533 U.S at 687; *Rasul v. Bush*, 542 U.S. 466, 473, 483 (2004). Le is physically detained within the geographical boundaries of this district, and the federal respondents do not dispute that this Court possesses habeas jurisdiction. *See* 28 U.S.C. § 2241(a).

### B.   8 U.S.C. § 1231 and Due Process

Le is currently detained under 8 U.S.C. § 1231(a). Under that section, the government must generally execute the alien's removal within a ninety-day "removal period" following a final order of removal. 8 U.S.C. § 1231(a)(1)(A). It must also keep the alien in custody while the removal period runs. *Id.* § 1231(a)(2)(A). But after ninety days, an alien "may be detained" or may be released under terms of supervision. *Id.* § 1231(a)(6); *see Johnson v. Arteaga-Martinez*, 596 U.S. 573, 578-79 (2022).

Section 1231(a) says nothing about how long the government can hold someone once the ninety-day window closes. But that silence is not a blank check. *See Zadvydas*, 533 U.S. at 690. A "statute permitting indefinite detention of an alien" would run headlong into the due process clause of the Fifth Amendment. *See id.* To avoid that constitutional collision, the Supreme Court read a limit into the statute: § 1231(a)(6) "does not permit indefinite detention" but instead "limits an alien's post-removal-period detention to a period reasonably necessary" to carry out the removal. *Id.* at 689. To guide the lower federal courts, the Supreme Court settled on a relatively bright-line rule that detention is "presumptively reasonable" for six months. *Id.* at 701. But after that six-month mark, and "once the alien provides good reason to believe that there is no significant likelihood of

4

removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id.* As the detention continues, "what counts as the 'reasonably foreseeable future'" shrinks. *Id.* But the six-month presumption is not a hard-and-fast rule requiring release. *Id.* "To the contrary," detention remains lawful "until it has been determined that there is *no* significant likelihood of removal in the reasonably foreseeable future." *Id.* (emphasis added).

At this point, it is undisputed that the six-month mark has come and gone.[3] So, Le must give the Court "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.*

To that end, Le's appointed counsel clarifies that he is not arguing that detention beyond six months is a *per se* constitutional violation, but that there is no "significant likelihood of removal in the reasonably foreseeable future" in this case. *See Zadvydas*, 533 U.S. at 701. He argues the "2020 MOU only creates the [ ] possibility of removals to Vietnam" but does not create a "significant likelihood of [Le's] removal." As he sees it, the MOU "in no way guarantees that Vietnam will accept [Le]." He also claims the government hasn't proven that travel documents are coming anytime soon. From his perspective, the six-year-old MOU speaks for itself: "[t]he fact that nearly six years have elapsed since the MOU was executed" without his removal shows his removal is unlikely. As such, he argues Le's detention under § 1231(a) for a cumulative period over 335 days violates the due process clause of the Fifth Amendment.

Despite his ongoing detention, Le has not persuaded the Court that there is no significant likelihood of removal to Vietnam in the reasonably foreseeable future. The

---

[3]Between his re-detention in October 2025 and his habeas filing in February 2026, fewer than six months had passed. On that basis, the government argued his detention was presumptively constitutional. Le, of course, uses a different clock. He countered he had been detained more than six months by including the 152 days he was detained under § 1231(a) back in 1995-96. However the detention length is calculated, the six-month mark has now come and gone. The presumption the government relied on has expired.

thrust of his *Zadvydas* argument is that because the government did not attempt to remove him under the MOU from 2020 to 2024—and there is no "guarantee" that Vietnam will provide his travel documents or accept him—his removal is not "reasonably foreseeable." But *Zadvydas* does not require a sure-fire guarantee of removal.

*Zadvydas* dealt with two aliens who were detained for years awaiting their removal. *See id.* at 684-86.  One detainee's home country lacked a repatriation agreement with the United States, and the other's country of birth refused to take him back.  *Id.*  With no "reasonably foreseeable" path for removal, their detention had become "indefinite and potentially permanent."  *Id.* at 698.  Here, there is no such barrier to removal—and Le does not argue there is.  Rather, he points to the pre-MOU difficulties in removing Vietnamese citizens and doubles down on the fact that the government could have removed him sooner. Those arguments are unavailing.

In *Zadvydas* itself, the Supreme Court vacated a decision that would have forced the government to release an alien detained under § 1231(a) simply because no repatriation agreement existed.  *Id.* at 702.  The problem, the Supreme Court explained, was that the lower court ignored the possibility of "successful future negotiations."  *Id.*  Here, rather than a diplomatic dead-end there is a relatively new agreement that makes Le's removal possible.  The Court will not ignore the 2020-MOU and declare Le's removal presently unforeseeable simply because his removal could have been attempted sooner.  *See id* (vacating a grant of habeas with instructions to give "due weight" to the "likelihood of successful future negotiations" even though the detainee's home country had no "'pending' repatriation agreement").  As things stand right now, there is no indication that Le's detention has become indefinite like the *Zadvydas* detainees.  *See id.*

And while Le has not persuaded the Court that his detention has become "indefinite and potentially permanent" at this juncture, *id.* at 696, the government has come forward with evidence that his departure is, in fact, on the horizon.  The MOU shows there is a legal path for Le's removal (Filing No. 15-1).  ICE's notice informed Le that efforts to remove

him to Vietnam are ongoing and expected to occur in the reasonably foreseeable future. Le has complied with requirements that he fill out forms necessary for repatriation (Filing No. 6). A travel-document request was submitted to ICE headquarters on October 16, 2025, and forwarded to the "Vietnam Attache" on November 24, 2025 (Filing No. 6). Thus, the Court cannot say his detention is unconstitutional at this point.

### C.    Revocation of Release under 8 C.F.R. § 241.4 or § 241.13

Le also argues that independent of *Zadvydas*, because the government "fail[ed] to follow the procedural requirements" for revoking his supervised release, the revocation is "invalid" and his detention is unlawful. Specifically, Le complains that ICE's "Executive Associate Commissioner" did not personally revoke his release. *See* 8 C.F.R. § 241.4(1)(2). He points out that his notice is signed by a "Deputy Field Office Director, without any apparent involvement from the responsible ICE headquarters-level official." He maintains this makes the revocation invalid because 8 C.F.R. § 241.4(l)(2) provides that the "Executive Associate Commissioner" has the authority to revoke release. *See id.* ("A district director may also revoke release of an alien, when, in the district director's opinion, revocation is in the public interest and circumstances do not reasonably permit referral of the case to the Executive Associate Commissioner.").

This argument applies the wrong legal framework. Le's revocation of release falls under 8 C.F.R. § 241.13, not § 241.4. And § 241.13 contains no requirement limiting revocation authority to specific high-ranking ICE executives.

Section 241.13 governs revocation of supervised release when ICE has previously "ma[de] a determination . . . that there is no significant likelihood of removal in the reasonably foreseeable future." 8 C.F.R. § 241.13(b). Once ICE has made that determination, ICE may subsequently "revoke [the] alien's release . . . and return the alien to custody if, on account of changed circumstances, [it] determines that there is a significant likelihood that the alien may be removed in the reasonably foreseeable future." § 241.13(i)(2). "Upon revocation, the alien will be notified of the reasons for revocation

7

of [his] release[, and ICE] will conduct an initial informal interview . . . to afford the alien an opportunity to respond to the reasons for revocation stated in the notification." § 241.13(i)(3). "Thereafter, if the alien is not released from custody following the informal interview provided for in [§ 241.13(h)(3)], the provisions of § 241.4 shall govern the alien's continued detention pending removal." *Id.* § 241.13(i)(2). So, while § 241.4 governs Le's "continued detention pending removal," *see id.*, it did not govern his revocation of release—§ 241.13 did, *see id.* § 241.13(b). And when § 241.13(i) governs revocation, the procedures outlined for revocation under § 241.4(l) do not apply. *See Saengnakhone S. v. Noem*, No. 25-cv-4775, 2026 WL 34132, at *5 (D. Minn. Jan. 6, 2025) ("ICE previously determined there was not a significant likelihood of his removal, and therefore § 241.4 does not govern the re-detention decision.") (citing 8 C.F.R. § 241.4(b)(4)).

In this case, ICE's notice invoked § 241.13, stating that its decision to detain Le was based on "changed circumstances in [his] case" leading to a "significant likelihood of removal in the reasonably foreseeable future." The notice itself contradicts Le's argument that his detention is unlawful because the government was bound to follow the revocation procedures in § 241.4. When supervised release is revoked pursuant to § 241.13(i), notice and an informal interview are required, but Le's written notice is in the record (Filing No. 6-7), and Le makes no argument that he was not given an informal interview to respond to the reasons for the revocation.

Le generally bears the burden of proving that his detention is unlawful. *See Maye v. Pescor*, 162 F.2d 641, 643 (8th Cir. 1947) (noting in a "habeas corpus proceeding, the burden [is] upon [the petitioner] to establish some or all of the charges in his petition"); *Copenhaver v. Bennett*, 355 F.2d 417, 422 (8th Cir. 1966) (same). Le has not met his burden. His arguments do not persuade the Court that his detention violates the Fifth Amendment, the INA, or the INA's enacting regulations—at least on this record. Accordingly,

IT IS ORDERED:

1.    Petitioner Van Le's Petition for Habeas Corpus (Filing No. 1) is denied.

2.    A separate judgment will issue.

Dated this 21st day of April 2026.

BY THE COURT:

Robert F. Rossiter, Jr.
Chief United States District Judge

9